IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| ALLEN F. CALTON | § | |
| VS. | § | CIVIL ACTION NO. 1:17-CV-239 |
| JESS TUCKER | § | |

MEMORANDUM OPINION AND ORDER

Plaintiff Allen F. Calton, a prisoner previously confined at the Stiles Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983 against Dr. Jess Tucker, a dentist employed at the Stiles Unit. Both parties consented to proceed before the magistrate judge for all further proceedings and entry of judgment, and the case was reassigned to the magistrate judge on August 15, 2024.

Defendant filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. #238.) Plaintiff filed a Response (doc. #245), and Defendant filed a Reply (doc. #310). This Memorandum Opinion considers the merits of Defendant's Motion, Plaintiff's Response, and Defendant's Reply.

Factual Background[1]

Plaintiff has a history of periodontal disease. In January of 2018, Dr. Jerry Wong determined that Plaintiff needed scaling and root planing on his upper and lower teeth. Plaintiff was scheduled to have the procedure on April 9, 2018, but Defendant "overrode" Dr. Wong's orders on that date. Plaintiff states that Defendant told Plaintiff it was not cost-efficient and "might not do any good" due to the disease progression. (Doc. #60 at 1.) Plaintiff alleges Defendant denied him medical care because Plaintiff would not consent to have some of his teeth extracted, and he was denied further care from the dental department. (Doc. #60 at 1-2).

[1] The live pleading in this case is labeled as Plaintiff's Second Supplemental Complaint (doc. #60). Plaintiff's previous pleadings identified additional defendants and incidents, but those claims have been dismissed. *See Calton v. Patel,* No. 22-40729, 2024 WL 1826244, at *1 (5th Cir. Apr. 26, 2024) (affirming the dismissal of all defendants except Defendant Tucker).

Motion for Summary Judgment

Defendant contends that he is entitled to qualified immunity. Defendant asserts that Plaintiff's claims amount to no more than a disagreement over his medical treatment. Defendant argues that Plaintiff has not raised a genuine dispute of material fact as to the following issues: (1) whether the periodontal disease on Plaintiff's lower arch posed an objective risk of serious harm to Plaintiff's health on April 9, 2018; (2) whether Defendant had subjective knowledge of the risk to Plaintiff's lower arch and disregarded that risk; and (3) whether the decision to cancel the root planing and scaling procedure caused Plaintiff harm.

In support of the Motion, Defendant submits a copy of the remand order following an earlier dismissal of this case (Exhibit 1); excerpts of Plaintiff's deposition (Exhibit 2); excerpts of Defendant's deposition (Exhibit 3); excerpts of deposition of Billy Horton, D.D.S. (Exhibit 4); record from in-processing examination dated August 2, 2005 (Exhibit 5); excepts of deposition of Don Knight, D.D.S. (Exhibit 6); excerpts of deposition of Jerry Wong, D.D.S. (Exhibit 7); Dental Services manual Policy 36.6 (Exhibit 8); relevant portions of Plaintiff's medical records (Exhibit 9); and excerpts of deposition of Carla Bentley (Exhibit 10).

Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners*, 334 F.3d 423, 427 (5th Cir. 2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech*, 334 F.3d at 427.

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991). In prisoner *pro se*

cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989) (*quoting Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir. 1980)).

Analysis

Title 42 U.S.C. § 1983 creates a cause of action against any person who, while acting under color of state law, causes a person to be deprived of a federally-protected constitutional right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Phillips v. Monroe Cnty.*, 311 F.3d 369, 373 (5th Cir. 2002). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured . . . .

42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must allege two elements. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez*, 446 U.S. at 640.

*Qualified Immunity*

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is intended to protect all officials, except those who are plainly incompetent or who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Federal courts use a two-part test to determine whether the defendants are entitled to qualified immunity. *Freeman v. Texas Dep't Crim. Just.*, 369 F.3d 854, 863 (5th Cir. 2004). The first prong of the test requires the court to determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope*, 536 U.S. at 736; *Freeman*, 369 F.3d at 863. If a constitutional right was violated, the court must decide whether the right was

clearly established at the time of the violation. *Freeman*, 369 F.3d at 863. Clearly established rights should not be defined broadly. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope*, 536 U.S. at 739 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The district court has discretion to decide which prong of the two-part test to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Plaintiff's allegations meet the second prong of the test because it was clearly established at the time of the alleged violations that the deprivation of dental treatment may rise to the level on an Eighth Amendment violation. *Green v. Hendrick Medical Center*, 251 F.3d 157, 2001 WL 300844, at *4 (5th Cir. Mar. 7, 2001) (unpublished) Thus, the court must determine whether Plaintiff has alleged facts sufficient to state an Eighth Amendment claim against the defendant.

*Eighth Amendment*

Although the Eighth Amendment does not explicitly mandate a certain level of medical care for prisoners, the cruel and unusual punishment clause has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999). A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Domino v. Texas Dep't Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001).

An Eighth Amendment claim consists of two components--one objective and one subjective. *Farmer*, 511 U.S. at 839. To satisfy the objective requirement, the plaintiff must prove that he was exposed to a substantial risk of serious harm. *Id.* at 834; *Lawson v. Dallas Cnty.*, 286 F.3d 257, 262

(5th Cir. 2002). In the context of a medical claim, the plaintiff must show that his medical need was serious. *Stevenson v. Tocé*, 113 F.4th 494, 502 (5th Cir. 2024). A medical need is serious if "treatment has been recommended, or the need for treatment if 'so apparent that even laymen would recognize' it." *Id.* (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345 n. 12 (5th Cir. 2006)). The plaintiff must also demonstrate that the defendants were deliberately indifferent to the risk. *See Farmer*, 511 U.S. at 834; *Lawson*, 286 F.3d at 262. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the defendants were aware of an excessive risk to plaintiff's health or safety, and consciously disregarded the risk. *Farmer*, 511 U.S. at 840-41; *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Stewart*, 174 F.3d at 534. A delay in medical treatment can rise to the level of an Eighth Amendment violation if the defendant was deliberately indifferent and the delay caused substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment."); *Stewart*, 174 F.3d at 534. Nor does an inmate's disagreement with his medical treatment amount to an Eighth Amendment violation. *Stewart*, 174 F.3d at 537; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Citing the National Institute of Dental and Craniofacial Research, Defendant states that periodontal disease is defined as an infection caused by plaque that builds up around the teeth and hardens, and the infection can spread to the bones if untreated, making it painful to chew and possibly causing teeth to become loose. (Doc. #238 at 6.) Scaling and root planing is a dental treatment "where you scrape the surface of the roots to remove accretions and accumulations of calculus, as well as plaque or as well as diseased submentum." (Doc. #238-7 at 10.) The University of Texas Medical Branch Correctional Managed Care (UTMB-CMC) provides medical and dental care to inmates at the Stiles Unit. UTMB-CMC classifies periodontal disease as Type 0 through Type IV, with Type IV being the most severe. (Doc. #238-9 at 2.) According to their policy, "the type is based on the most severe area of periodontal disease (possibly one tooth). (Doc. #238-9 at 2.) Under UTMB-CMC guidelines, patients do not receive scaling and root planing unless the pockets around their teeth are measured at 4-5 millimeters, which is Type III. (Doc. #238-9 at 7.)

Plaintiff's periodontal charting from January 16, 2018, reflects that his pocket depth measurements ranged from 1-3 millimeters. (Doc. #238-10 at 13.) At the time of his charting on January 16, 2018, Plaintiff's periodontal disease was categorized as Type IV based on the "periodontal probing depths and radiographic evidence." (Doc. #238-10 at 14-15.) Following the periodontal charting, Dr. Jerry Wong ordered scaling and root planing on the upper and lower jaws, fluoride application, follow-up periodontal probing after completion of scaling and root planing, and for the dentist to discuss findings with Plaintiff and advise him of the frequency for periodontal maintenance. (Doc. #238-10 at 16.) During his deposition, Dr. Wong stated that he erred when he determined that Plaintiff needed scaling and root planing on the upper right quadrant and lower jaw, and that he thought he might have looked at the wrong line of the periodontal chart when he made those determinations. (Doc. #238-8 at 8-9.)

Plaintiff returned to the dental clinic on April 9, 2018, and signed a consent for a periodontal evaluation and a periodontal treatment that was described as a "deep cleaning" on the consent form. (Doc. #238-10 at 2.) The medical records reflect that Plaintiff was scheduled for scaling and root

planing on his upper arch, but Defendant determined that additional evaluation of Plaintiff's upper teeth was needed before the procedure. (Doc. #238-10 at 4-5.) Defendant concluded that the five remaining teeth on Plaintiff's upper jaw required extraction because they either had non-recoverable periodontal diseases with abscesses or non-recoverable periodontal bone loss. (Doc. #238-10 at 5-6, 8.) In his deposition, Defendant states that Plaintiff's upper teeth were nonrestorable. (Doc. #238-4 at 3.) With respect to Plaintiff's lower teeth, Defendant states that scaling and root planing of the lower teeth was not indicated because Plaintiff did not have active gum disease, there were no pocket depths greater than 3 millimeters, and there was no bleeding. (Doc. #238-4 at 3.) Plaintiff refused consent to extract the upper teeth. (Doc. #238-10 at 6, 8.). The medical records reflect that Defendant ordered "SCRP will be removed from treatment plan." (Doc. #238-10 at 8.) At this visit, Plaintiff's periodontal disease was categorized as Type IIII. (Doc. #238-10 at 6, 8.) No treatment for Plaintiff's lower jaw was ordered.

Defendant argues that this case simply involves a disagreement over whether scaling and root planing should have been done on his lower teeth on April 9, 2018. A decision to provide a different treatment other than the scaling and root planing ordered by Dr. Wong would be a disagreement over the proper course of treatment, which would not rise to the level of a constitutional violation. In this case, Plaintiff states that he was denied any treatment plan for his lower arch teeth because he refused to consent to the extraction of his upper teeth. (Doc. #218 at 2.) Plaintiff states that Defendant told him that "by refusing the recommended extractions of his upper arch teeth, that Calton refused the plan and by refusing the plan, Calton would not receive SCRP on his lower arch teeth." (Doc. #218 at 2.) Plaintiff states that Defendant told him to put in a sick call if he changed his mind about extracting the upper teeth. Defendant alleges he then tried to clarify what Defendant was telling him by asking, "If I don't let you pull all of my upper arch teeth, I don't get nothing?" (Doc. #218 at 2.) Defendant allegedly responded, "You have to consent to the recommended extractions before any other treatment options will be provided to you as part of your 'Comprehensive Treatment Plan.'" (Doc. #218 at 2.0.)

On April 19, 2018, Plaintiff filed a Step 1 grievance about the denial of dental treatment. (Doc. #67 at 3-4.) Plaintiff was advised, in part: "However, in order to receive cleaning, your other dental needs must be addressed. During your 4/9/18 visit, you refused treatment. Please submit sick call request as necessary." (Doc. #67 at 4.) At the Step 2 level, Plaintiff received the following response:

> A review of the medical grievance and documentation has been completed regarding your medical complaint, you have been denied scaling and deep cleaning of your teeth by the provider. To remedy this, you are requesting the appropriate dental care.
>
> An appellate review of the medical grievance and clinical record indicates the response from Step 1 is appropriate. Upon researching your electronic health records, documentation form 04/09/2018 states scaling is not indicated on the upper arch, instead 8, 9, 11, 15, and 15 require extraction due to non-recoverable periodontal disease and infection. You were afforded the opportunity to have the teeth extracted and refused. Please be advised, you were examined by two separate providers, one may have seen issues the other did not. Furthermore, there are dental levels of care and policies which must be followed. Additionally, although you and your healthcare providers may differ in opinion regarding your needs and the medical treatment rendered, these decisions are ultimately the responsibility of the facility providers.
>
> For future reference, please see Correctional Managed Health Care (CMHC) policy E-36.1 regarding dental levels of care. The policy should answer any questions or concerns you may have. No further action is warranted at this time through the grievance process.

(Doc. #67 at 6.)

Defendant's argument that Plaintiff's periodontal disease was not a serious medical need is not well-taken. According to the definition provided by Defendant, periodontal disease is a progressive disease that can make is painful to chew and possibly cause teeth to become loose. Dr. Wong had previously determined that treatment on Plaintiff's bottom jaw was necessary. Defendant might have disagreed with the type of treatment that was necessary, but no treatment of any sort was recommended in Plaintiff's medical records and none was provided.

Defendant also argues that he did not have subjective knowledge of risk to Plaintiff's lower arch if left untreated. When Defendant examined Plaintiff on April 9, 2018, Plaintiff's periodontal disease was classified as Level III. According to UTMB-CMC policy, Level III is defined as "moderate to deep pockets, moderate to severe bone loss, unsatisfactory topography. Condition may

be chronic or aggressive." (Doc. #238-9 at 2.) Patients with Level III or IV disease "are eligible for more advanced periodontal therapy (i.e., deep scaling and root planing with anesthesia) after 12 months of incarceration and with a documented, acceptable (P.I.=205 or less) level of oral self-care." (Doc. #238-9 at 5.) But even if Defendant determined that Plaintiff did not require scaling and root planing on his bottom teeth, the policy provides that patients "are eligible for the removal of moderate to heavy supra-gingival calculus in the presence of Level 1 or 2 gingival conditions." (Doc. #238-9 at 4.) This evidence is sufficient to create a material dispute as to whether Defendant had subjective knowledge of the risk to Plaintiff's lower arch in the absence of dental care.

Finally, Defendant argues that the decision to cancel the scaling and root planing did not cause Plaintiff harm. Plaintiff states that he suffered ongoing pain and the ultimate loss of additional teeth on his lower jaw as the result of being deprived dental treatment on his lower jaw. While Defendant presented evidence that scaling and root planing of the lower teeth were not the appropriate treatment in this instance, the record creates a material dispute as to whether alternate treatment should have been ordered and whether the failure to offer alternate treatment resulted in harm to Plaintiff.[2] Defendant argues that Plaintiff was "free to request re-evaluation or routine cleanings after April 9, 2018, or decide to go forward with the prescribed periodontal treatment on his upper arch. . . ." (Doc. #238 at 10.) Accepting Plaintiff's version of the facts as true, Plaintiff was told that he would not receive further treatment until he agreed to the extraction of his upper teeth. This is supported by the absence of any recommended treatment for his lower jaw in the medical records, and by responses to Plaintiff's grievances.

The summary judgment evidence is sufficient to create a genuine dispute of material fact whether Defendant was aware of a serious risk of harm to Plaintiff's health and consciously

[2] Defendant argues that this case is limited to Plaintiff's claim that he was denied scaling and root planing on his lower jaw. (Doc. #310 at 3.) Plaintiff's Second Supplemental Complaint (doc. #60), is required to be liberally construed because it was filed at a time when he was proceeding *pro se*. In that live pleading, Plaintiff stated that he was denied medical care because he did not agree to the tooth extractions, and that he "was not provided further care." These allegations are sufficient to encompass the denial of any dental care for his lower jaw, not just the denial of scaling and root planing.

disregarded the risk. Thus, Defendant is not entitled to qualified immunity. Because there are genuine issues of material fact, Defendant's Motion for Summary Judgment should be denied.

ORDER

In light of the foregoing, Defendant's Motion for Summary Judgment (doc. #238) is **DENIED**.

**SIGNED this the 24th day of September, 2026.**

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE